Michael Lovallo v. Commissioner.
Lovallo v. Commissioner
Docket Nos. 19184, 19653, 19654.
United States Tax Court
1950 Tax Ct. Memo LEXIS 138; 9 T.C.M. (CCH) 634; T.C.M. (RIA) 50184; July 25, 1950
*138 During the taxable years 1944, 1945 and 1946, petitioner owned and operated a bar and restaurant. He filed returns for these years purporting to show the net income from this business. Respondent determined that these returns did not correctly reflect income on the grounds that petitioner's purchases were overstated. Respondent also eliminated petitioner's opening inventory in his return for the year 1946, that being the first year that petitioner used inventories in his business. In an amended answer respondent also alleges affirmatively that petitioner understated his sales for each of the taxable years. Held, respondent's determination that petitioner had overstated his purchases and understated his sales is not sustained. Held, further, that respondent correctly eliminated petitioner's opening inventory in his return for the year 1946. John G. Barbas, 1 B.T.A. 589, followed. Leonard C. Lovallo, Esq., for the petitioner. Thomas R. Charshee, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion In Docket No. 19184 is involved a deficiency in petitioner's income tax for the year 1944 of $1,344.47. This deficiency is due to respondent's adding to the net income of $5,184.19 reported on petitioner's return, the sum of $3,730.36 as an overstatement of petitioner's purchases and $405 as the cost of a refrigerator which petitioner took as a deduction on his return. Petitioner assigns error as to the action of respondent in decreasing his purchases by $3,730.36 but concedes that respondent was correct in disallowing as a deduction the cost of the refrigerator and in treating it as a capital item. In Docket No. 19653 is involved a deficiency in petitioner's income tax for the year 1945 of $1,878.98. This deficiency is due to respondent's adding to the net income of $5,717.96 reported on petitioner's return, the amount of $5,510.98 as an overstatement of petitioner's purchases and "Auto Use Stamp $5.00 and Laundry of work clothes $25.00." Petitioner *140 assigns error as to the action of respondent in decreasing his purchases by $5,510.98 but he does not assign any error as to the other two minor adjustments made by respondent. In Docket No. 19654 is involved a deficiency in petitioner's income tax for the year 1946 of $1,928.99. This deficiency is due to respondent's adding to the net income of $5,919.24 reported on petitioner's return, "Elimination of opening inventory $2,200.00 and Decrease in purchases $4,273.77." Petitioner contests the correctness of both of these adjustments which were made by respondent to the net income as reported by petitioner on his 1946 return. Respondent affirmatively alleges in his amended answers that petitioner's sales for the taxable years 1944, 1945 and 1946, were understated by at least the respective amounts of $8,404.50, $11,580.50 and $8,948.33, which understatements result in understatements of petitioner's income of at least the same amounts, and by reason of these understatements of income, an increase in the amount of petitioner's deficiency for each of the taxable years will result. The questions for our consideration, therefore, are: (1) whether petitioner's purchases for the taxable *141 years were overstated, (2) whether petitioner's sales for the taxable years were understated, and (3) whether the opening inventory shown on petitioner's income tax return for the year 1946 in the amount of $2,200 should be eliminated from petitioner's cost of sales. Findings of Fact The facts which were stipulated are so found. Petitioner is an individual who, during the taxable years, resided at Buffalo, New York. His income tax returns for the years 1944, 1945 and 1946, were filed with the Collector of Internal Revenue for the 28th District of New York. During the taxable years petitioner was employed by the Acme Steel Company of Buffalo, New York. He owned and operated a bar and restaurant located at 24 South Elmwood Avenue, Buffalo, New York, (hereinafter sometimes referred to as the restaurant) whose sales consisted of liquor, beer, wine and food. During the taxable years involved the restaurant was managed and operated by Rose Vaccaro, petitioner's sister (hereinafter sometimes referred to as Rose). There were three additional employees in the restaurant. All of the employees, including Rose, ate all of their meals in the restaurant six days a week at a cost of 70 *142 cents a day each. They did not pay anything for these meals and petitioner treated the cost of their meals as a part of their compensation. No question is raised as to the deductibility of the compensation paid to these four employees. The restaurant's books and records consisted of a single book in which all purchases and sales were entered at the end of each day. The book was kept on a cash basis and on a single-entry method of accounting. Some purchases were made in cash and others by check. All of petitioner's purchases for food were paid in cash. Articles that were purchased each day for cash were marked down on a daily record sheet and at the end of each day were entered in the above account book. In the years 1944, 1945 and 1946, Rose entered in the account book the respective amounts of $4,187.95, $4,543.64 and $4,736.90 for the cost of food purchased in those years. In the years 1944, 1945 and 1946, the cost of liquor, wine and beer purchased by petitioner was as follows: 1944
1945
1946
Liquor
$3,507.12
$ 4,144.19
$4,688.57
Wine
1,107.51
1,308.69
1,480.57
Barrel Beer
5,965.15
3,800.00
1,915.26
Bottle Beer
8,181.08
10,673.86
9,994.66
*143 The income tax returns filed by the petitioner for the taxable years 1944, 1945 and 1946, show total purchases in the operation of the bar and restaurant in the respective amounts of $22,948.81, $24,470.88 and $22,805.84. In the deficiency notices respondent decreased purchases as recorded on the petitioner's book in the amounts of $3,730.36, $5,510.98 and $4,273.77, respectively. During the years 1944, 1945 and 1946, petitioner paid $2.80 per fifth for liquor and 81 cents per fifth for wine. During these years petitioner purchased 662.8, 422 and 213 half-barrels of beer. Each half-barrel of beer contains 15.75 gallons. During these years petitioner sold whisky for 20 and 25 cents a drink, depending on the brand. A single drink contained 7/8 of an ounce and a double was two ounces. Beer was sold for 10 and 15 cents a bottle, depending on the brand. A four-ounce glass of wine sold for 25 cents a drink. During the taxable years petitioner's total sales were taken at the end of each day from the cash register reading and entered in the account book by Rose. Sales were not segregated as to items sold on the cash register. The income tax returns filed by petitioner for the taxable *144 years 1944, 1945 and 1946, show gross income from sales in the respective amounts of $30,654.40, $31,488.50 and $31,802.72, and net income for the taxable years in the respective amounts of $2,085.47, $2,029.52 and $3,043.25 from his restaurant and tavern business. Petitioner had other net income of $3,597.72 for 1944, $4,294.19 for 1945 and $3,375.99 for 1946, from other sources which he reported on his returns. These latter amounts are not involved in these proceedings. The petitioner in his return for the year 1946, reported an opening inventory as of January 1, 1946, in the amount of $2,200, and reported a closing inventory in the amount of $2,100, and cost of goods sold $22,905.54. In his deficiency notice for the year 1946, respondent eliminated the opening inventory of $2,200. Petitioner reported no inventories in his 1944 and 1945 returns. The inventory of $2,200 was not entered in petitioner's account book at the beginning of the year 1946. Petitioner made deposits in a bank account maintained by him in the name of Mildred Vaccaro. The total deposits in 1944, 1945 and 1946, were in the respective amounts of $17,956.74, $23,568.43 and $26,644.14. Receipts from his business *145 were deposited in this account, as well as income from other sources. Petitioner had a list of O.P.A. prices charged in his restaurant posted in a conspicuous place which read, in part, as follows: OUR CEILING PRICES
Hamburg, Potatoes & Veg.
$.25
Pork Chop, Potatoes & Veg.
.30
Roast Beef, Potatoes & Veg.
.30
2 Eggs, Potatoes & Veg.
.25
Ham Sandwich
.10
Egg Sandwich
.10
Hamburg Sandwich
.10
Coffee
.05
Fish Fry, Veg. & Potatoes
.25
White Milk
.05
Sauerkraut & Wieners, Potatoes
.25
Pea Soup
.10
Opinion BLACK, Judge: Respondent, in the deficiency notices, determined that the petitioner had overstated his purchases for the years 1944, 1945 and 1946, in the respective amounts of $3,730.36, $5,510.98 and $4,273.77. However, in his brief he now contends that instead of the amounts determined in his deficiency notices, petitioner's purchases were overstated in the taxable years in the respective amounts of $3,730.36, $4,544.14 and $2,546.14. He also contends in his brief that petitioner's sales for the taxable years were understated in the respective amounts of $3,109.05, $6,271.23 and $4,517.62, instead of the larger amounts alleged in his *146 amended answers. Petitioner contends that his returns for the taxable years correctly reflect his purchases and sales as recorded in the single-entry books which were kept in his business. The evidence shows that petitioner's books and records consisted of a single account book in which purchases and sales were recorded. All cash purchases for liquor, beer, wine and food were entered on a daily sheet and at the end of each day entered in the account book. There was also entered in this account book other amounts expended for rent, gas, electricity and wages. It was stipulated that the figures as set out in petitioner's account book were correct as to the purchases of liquor, wine and beer. Thus the question as to purchases narrows itself down to the amount spent for food. Respondent contends that in view of the inadequacy and inaccuracy of petitioner's records and petitioner's failure to prove certain of the purchases appearing in the account book by invoices, it must be concluded that petitioner overstated purchases in the amounts of $3,730.36, $4,544.14 and $2,546.14 for the taxable years 1944, 1945 and 1946, respectively. If respondent's view were to be accepted this would mean *147 that petitioner's restaurant spent nothing for food in 1944, only $1,173.82 for food in 1945 and only $1,727.63 for food in 1946. Manifestly, we could not make any such findings as these in the face of the record of evidence which is before us. Witnesses who represented firms selling various items of food testified that petitioner purchased numerous food items and was a cash customer. The evidence also shows that many items were purchased from individual tradesmen and hucksters. Rose Vaccaro, who kept petitioner's books and records, testified that all purchases for food were made in cash and were entered on a daily sheet and at the end of each day were entered in the account book. As pointed out above, it was stipulated that petitioner's recorded purchases for liquor, beer and wine were correct and the evidence in the record convinces us that food purchases were recorded with reasonable accuracy. We are satisfied that the amounts which petitioner claims for food purchases in 1944, 1945 and 1946, are approximately correct. Under the circumstances, we hold that respondent erroneously determined that petitioner's purchases as reported on his income tax returns for the years 1944, 1945 *148 and 1946, were overstated. Petitioner's records of purchases and sales are not kept in as complete form as they should be and petitioner should be more careful to keep records which will enable the agents of the Bureau of Internal Revenue to verify items of income and items of deduction. Treasury regulations require a taxpayer to keep records which will correctly reflect his income and petitioner should be careful in the future to comply with these regulations. They are made both for the benefit of the Government and the taxpayer. We shall next consider whether petitioner understated sales in his returns for the taxable years 1944, 1945 and 1946. On this point the burden of proof was on the respondent, the issue as to the understatement of sales having been raised by the amended answers. [Dec. 13,384]. The evidence shows that the amounts of petitioner's sales were taken from the cash register reading and entered in the account book. Sales were not itemized. Respondent in his brief recomputes petitioner's sales of liquor, barreled beer and wine by taking the total quantity purchased and breaking this amount down into the total number *149 of ounces that could be sold, multiplied this by the estimated price per drink and deducted five per cent for spillage. In the case of bottled beer he estimated the average cost per case and estimated the price received per bottle. Respondent's recomputation by this method indicated that petitioner had sales, including food, for 1944, 1945 and 1946, in the respective amounts of $33,763.45, $37,759.73 and $36,320.34. Since petitioner reported in his returns total sales in the respective amounts of $30,654.40, $31,488.50 and $31,802.72, respondent contends that petitioner's sales were understated in the respective amounts of $3,109.05, $6,271.23 and $4,517.62 for the taxable years. We are not convinced that respondent's method of computation of petitioner's sales is more accurate as to the amount thereof than petitioner's record which was taken from the readings on the cash register. Under these circumstances, we hold that the respondent erroneously contends in his amended answers that petitioner's sales were understated for the taxable years 1944, 1945 and 1946. Respondent in his brief further contends that if this Court should allow the petitioner's purchases as set out in his account *150 book, that increases in food sales of approximately 30 per cent over the food purchased should be made. There is no evidence to support this contention and, inasmuch as it appears to be without rational foundation and arbitrary, it cannot be sustained. Cf. . In the notice of deficiency for the year 1946, respondent eliminated the opening inventory in the amount of $2,200 reported by petitioner in his return for that year, thereby reducing petitioner's cost of sales by that amount. Petitioner reported no inventories on his 1944 and 1945 returns. We think the respondent was fully justified in eliminating the opening inventory for 1946, inasmuch as the amount represented by that inventory had apparently already been deducted in computing gain on sales made in 1945. It cannot again be deducted in connection with the computation of gain from 1946 sales. ; . As above stated, petitioner had not used inventories in his business prior to 1946, but petitioner had the right to change to the use of inventories, especially if the Commissioner *151 interposed no objections. He has not done so; he has simply disallowed the opening inventory of $2,200 which is in accord with the Barbas case above cited. In the Barbas case, among other things, we said: In arriving at the net loss of $12,825.28, originally computed by the taxpayer, he computed the cost of sales as follows: Mdse. inventory Jan. 1
$ 24,920.99
Purchases
146,118.86
Total
$171,039.85
Mdse. inventory Dec. 31
21,802.25
Cost of sales
$149,237.60
This is, of course, the correct method of computing the cost of sales upon the accrual basis. An examination of petitioner's return for 1946, which is in evidence, shows that petitioner used the same method as was used above in the Barbas case. In a schedule attached to the return petitioner computed the cost of goods sold in 1946, as follows: Inventory 1/1/46
$ 2,200.00
Purchases
22,805.84
Total
$25,005.84
Less inventory 1/1/47
2,100.00
Cost of goods
$22,905.84
Just as the Commissioner, in determining the deficiency in the Barbas case disallowed the opening inventory of $24,920.99, so has he disallowed the opening inventory of $2,200 in the instant case. In the Barbas case *152 the Commissioner stated his reasons for disallowing the taxpayer's opening inventory of January 1, as follows: But for the years prior to 1920, the taxpayer reported income upon a cash receipts and disbursements basis. In other words, cost of sales was arrived at by a simple total of the cash paid for merchandise during the year. In transferring from a receipts and disbursements basis to an accrual basis, therefore, in the first year after such change, if cost of goods is computed in the usual way adopted under the accrual method, there will be included in the cost through the use of the inventory at the beginning of the year, goods which were paid for in the previous period and which, entered into the cost of goods for that period, resulted in a double deduction from income on the part of the taxpayer. This, of course, does not properly reflect the income of the taxpayer over the two-year period. The Commissioner has solved this problem by adding to income the taxpayer's inventory at the beginning of the year, in effect computing the cost of sales on the basis of purchases made during the year, less inventory at the end. The taxpayer has introduced no evidence to show that any *153 portion of the amount he claims as inventory at the beginning of the year was actually not paid for, and therefore not included in cost of goods in prior years and deducted from prior returns; * * * The same reasons as given above by the Board of Tax Appeals apply equally in the instant case to the disallowance by the Commissioner of petitioner's opening inventory of $2,200 on January 1, 1946. This works no injury to petitioner. He, having adopted the method of using inventories in 1946 and the Commissioner having in effect acquiesced in it, the petitioner should continue to use inventories in the computation of net income from his tavern and restaurant business in the year 1947. See Regulations 111, section 29.41-3. By so doing he will receive the benefit of his closing inventory of $2,100 for the year 1946. We do not have the year 1947 before us and we, therefore, do not know what was done as to that year, but that is what should be done in accordance with the rule announced in For the reasons above stated, the Commissioner's action in disallowing petitioner's opening inventory of $2,200 for January 1, 1946, is sustained. Decisions will *154 be entered under Rule 50.