**F.E. SCHUMACHER COMPANY, INC., Plaintiff,**

v.

**The UNITED STATES of America, Defendant.**

Nos. 1:01CV0979, 5:02CV150, 5:02CV1569.

United States District Court, N.D. Ohio, Eastern Division.

Jan. 23, 2004.

Andrew Agati, Squire, Sanders & Dempsey, Mark J. Valponi, Stephen M. Nechemias, Peter M. Poulos, Stephen H. Jett, Taft, Stettinius & Hollister, Kenneth A. Bravo, Ulmer & Berne, Cleveland, OH, for Plaintiff.

Michael W. Davis, Alejandro L. Bertoldo, United States Department of Justice, Washington, DC, for Defendant.

### MEMORANDUM OF OPINION

MANOS, District Judge.

On January 10, 2001, F.E. Schumacher Company, Inc., Plaintiff, filed a Complaint against the United States of America, Defendant, seeking judicial review of an Internal Revenue Service (hereinafter, IRS) collection due process determination affirming the imposition of a tax penalty in the amount of $30,094.80 plus interest (Docket No. 1, Case No. 1:01CV097).[1] The assessment penalized Plaintiff for remitting payroll taxes other than by Electronic Funds Transfer (sometimes hereinafter, EFT) pursuant to the Electronic Federal Tax Payment System (sometimes hereinafter, EFTPS) for the taxable period ending December 31, 1999. On January 24, 2002, Plaintiff filed a second Complaint against Defendant for judicial review of a separate collection due process determination (Docket No. 1, Case No. 5:02CV150). The action challenges assessment by the IRS of a 10% underpayment tax penalty in the amount of $84,895.19 for failure to deposit payroll and unemployment taxes by way of the EFTPS for the taxable periods ending September 30, 2000, December 31, 2000 and March 31, 2001, and December 21, 2000, respectively. The two (2) review actions request a determination by the Court that the above-referenced tax penalties were improperly assessed. Alternatively, Plaintiff seeks a determination by the Court that, if the penalties are appropriate, they should be abated according to law.

1. The Complaint is brought pursuant to 26 U.S.C. §§ 6320 and 6330(e) authorizing a taxpayer to appeal a notice of determination issued by the IRS to the District Court within thirty (30) days of determination.

On August 9, 2002, Plaintiff filed a third Complaint against Defendant, this one seeking a refund of tax penalties in the amount of $59,906.31 (Docket No. 1, Case No. 5:02CV1569). The IRS imposed the penalty because Plaintiff did not deposit payroll taxes for the taxable periods ending March 31, 2000 and June 30, 2000, by way of the EFTPS. The Complaint seeks a judicial determination that imposition of the penalty was erroneous and prays for a full refund.

On August 4, 2003, the Court granted permission to the parties to file cross motions for summary judgment. The motions contemplate the three (3) actions initiated by Plaintiff regarding the tax penalties for remittance of certain payroll and unemployment taxes by means other than the EFTPS (Case Nos. 1:01CV097, 5:01CV150 and 5:02CV1569). On October 3, 2003, Plaintiff filed its Motion For Summary Judgment (Docket No. 17, Case no. 5:02CV1569) and Defendant filed a Cross Motion For Summary Judgment (Docket No. 20, Case No. 5:02CV1569). On October 24, 2003, the parties filed respective briefs in opposition to the motions (Docket Nos. 23 and 24, Case No. 5:02CV1569) and on November 7, 2003, each filed a Reply (Docket Nos. 29 and 30, Case No. 5:02CV1569).

The Plaintiff is an Ohio corporation with its principal place of business in Hartville, Ohio. Defendant is the United States of America. The actions seeking judicial review of collection due process determinations issued by the IRS (Case Nos. 1:01CV097 and 5:02CV150) arise under the provisions of 26 U.S.C. § 6330(d). The Court maintains jurisdiction thereover pursuant to 28 U.S.C. §§ 1331 and 1340. Plaintiff's refund action (Case No. 5:02CV1569) arises under 28 U.S.C. § 1346(a)(1) and together with 28 U.S.C. §§ 1331 and 1340, vest this Court with jurisdiction.

The matter before the Court comes upon Plaintiff's Motion For Summary Judgment and Defendant's Cross Motion For Summary Judgment. The parties have fully briefed the issues and the matter is ripe for disposition. For the following reasons, Defendant's Motion is GRANTED and Plaintiff's Motion is DENIED.

## I. FACTS

The actions now before the Court relate to and arise out of assessment by the IRS of 10% tax penalties against Plaintiff for the last quarter of 1999, ending December 31, 1999; all four (4) quarters of 2000; the first quarter of 2001, ending March 31, 2001; and the first month (April) of the second quarter of 2001.[2] The IRS imposed the penalties as sanctions for Plaintiff's failure to deposit payroll and unemployment taxes electronically by way of the Electronic Federal Tax Payment System as required by 26 U.S.C. § 6302(h). Specifically, the penalties were imposed under 26 U.S.C. § 6656:

(a) Underpayment of deposits.—In the case of any failure by any person to deposit (as required by this title or by regulations of the Secretary under this title) on the date prescribed therefor any amount of tax imposed by this title in such government depository as is authorized under section 6302(c) to receive

**2.** The IRS recovered from Plaintiff $59,906.31 in penalties assessed for the first and second quarters of 2000. In Case No. 5:02CV1569, Plaintiff seeks a refund of said amount. Case Nos. 1:01CV097 and 5:02CV150 stem from appeals filed with the IRS by Plaintiff. The actions seek judicial review of adverse determinations made by the IRS regarding penalties assessed for the last quarter of 1999, the last two (2) quarters of 2000, the first quarter of 2001, and the first month of the second quarter of 2001.

such deposit, unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be imposed upon such person a penalty equal to the applicable percentage of the amount of the underpayment.

(b) Definitions.—Except as provided in subparagraph (B), the term "applicable percentage" means-

(i) 2 percent if the failure is for not more than 5 days,

(ii) 5 percent if the failure is for more than 5 days but not more than 15 days, and

(iii) 10 percent if the failure is for more than 15 days.

Section 6302(h) of the Internal Revenue Code (sometimes hereinafter, the Code) authorizes the Secretary of the Treasury to "prescribe such regulations as may be necessary for the development and implementation of an electronic fund transfer system which is required to be used for the collection of depository taxes." 26 U.S.C. § 6302(h)(1)(A). Treasury Regulation § 31.6302–1(h) describes and provides for the implementation of the electronic system. It identifies to which entities the system applies and delineates a phase-in schedule identifying dates by which those entities must deposit employment taxes electronically under the EFTPS.[3] *See* 26 C.F.R. § 31.6302–1(h).

The IRS assessed Plaintiff with a 10% failure-to-deposit penalty, pursuant to 26 U.S.C. § 6656, for the quarter ending September 30, 1999 (the third quarter of 1999), because it did not use the EFTPS to deposit employment taxes. Upon request made by Plaintiff, the IRS abated the penalty (Joint Stipulation Of Fact at p. 3,

¶ 10). Thereafter, commencing with the fourth quarter of 1999 and through the first quarter of 2001, the IRS imposed upon Plaintiff § 6656 10% penalties for each taxable period for its failure to deposit employment taxes by EFT pursuant to the EFTPS. Plaintiff requested collection due process hearings to challenge the penalties imposed for the periods ending December 31, 1999, September 30, 2000, December 31, 2000, and March 31, 2001. The IRS upheld the imposition of penalties for each period and denied Plaintiff relief therefrom. The IRS refused to abate the penalties for the six (6) quarters at issue based upon its determination that Plaintiff did not establish reasonable cause for its failure to comply with the electronic method of deposit prescribed in the Internal Revenue Code (Joint Stipulation Of Fact at p. 3, ¶ 11).

During the time periods relevant to the instant dispute, Plaintiff paid its hourly employees every other Friday (Plaintiff's Motion For Summary Judgment at p. 3). Treasury Regulations mandate that payroll taxes associated with a Friday payroll schedule are due three (3) banking days later, usually the following Wednesday. *See* 26 C.F.R. § 31.6302–1(c)(2). During the time frame at issue, Plaintiff paid its salaried employees on the last day of each month (Plaintiff's Motion For Summary Judgment at p. 3). Pursuant to IRS Regulations, if the last day of the month falls on a Wednesday, Thursday or Friday, the payroll taxes are due three (3) banking days later, usually the following Wednesday. *See* 26 C.F.R. § 31.6302–1(b)(3) and (c)(2). If the last day of the month falls on a Saturday, Sunday or Monday, payroll

---

**3.** Plaintiff's deposits for the taxable year 1995 were in excess of $800,000 (Joint Stipulation Of Facts at p. 3, ¶ 9, Docket No. 14, Case No. 5:02CV1569). Consequently, Treas. Reg. §§ 31.6302(h)(2)(i) and (h)(2)(ii) require Plaintiff to use the EFTPS to make its with-

holding tax deposits commencing July 1, 1997. The IRS extended the date for compliance to July 1, 1999, to give employers adequate time within which to set up necessary procedures.

taxes are due three (3) banking days later, usually the following Friday. *Id.* Federal unemployment taxes are due on or before the last day of the month following the end of each calendar quarter. *See* C.F.R. § 601.401(a)(5)(vi).

Plaintiff claims that it physically took its payroll taxes to the Bank One branch in Hartville, Ohio on the third banking day following the salaried and hourly payrolls (Plaintiff's Motion For Summary Judgment at p. 3). Plaintiff further alleges that on those days it received receipts from Bank One indicating that the proper Federal Bank, as Fiscal Agent for the United States, was credited in the amount of the taxes submitted (Plaintiff's Motion For Summary Judgment at pp. 3–4). The deposit slips created by Bank One certify that the funds were deposited with the appropriate Federal Reserve Bank on the same date they were submitted by Plaintiff (Plaintiff's Motion For Summary Judgment at p. 4). Plaintiff avers that all transmittals for the periods in question were timely according to IRS deadlines and that it was never penalized by the IRS for untimely payments (Plaintiff's Motion For Summary Judgment at p. 4).

## II. LAW & ANALYSIS

### A. Standard of Review

#### 1. Federal Civil Rule 56

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

When both parties file motions for summary judgment the Court applies the same standard of review provided in Civil Rule 56. *ITCO Corp. v. Michelin Tire Corp., Com. Div.,* 722 F.2d 42, 45 n. 3 (4th Cir. 1983). "When reviewing cross-motions for summary judgment, the court must evaluate each motion on its own merits and view all the facts and inferences in the light most favorable to the nonmoving party." *Lenning v. Commercial Union Ins. Co.,* 260 F.3d 574, 581 (6th Cir.2001) *citing, Matsushita Elec. Ind. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The Court must address each motion independently of the other and make disposition pursuant to Rule 56 standards of review. *See Arnold Pontiac–GMC, Inc. v. General Motors Corp.,* 700 F.Supp. 838, 840 (W.D.Pa.1988) *citing, Rains v. Cascade Industries, Inc.,* 402 F.2d 241, 245 (3rd Cir.1968).

Furthermore, where there is no dispute upon the facts and most of them, as here, are stipulated, the matter is one essentially involving a question of law and is proper for summary judgment procedure. *See Finnell v. Cramet, Inc.,* 289 F.2d 409, 414 (6th Cir.1961). Where "[t]he issues ... presented by the record and pleadings primarily involve questions of law..., [t]he court [is] empowered to enter a summary judgment." *Harris Stanley Coal & Land Co. v. Chesapeake & Ohio Railway Co.,* 154 F.2d 450, 455 (6th Cir.1946); *see also, Hawley v. Dresser Industries, Inc.,* 738 F.Supp. 243, 245 (S.D.Ohio 1990) (stating that summary judgment is appropriate where dispute "turns only on legal question").

The parties have stipulated to the operative facts. The present dispute involves interpretation of the Tax Code and appurtenant Treasury Regulations. As such, the dispute is proper for adjudication by this Court on summary judgment.

#### 2. Tax Refund Action and 26 U.S.C. § 6330(d) Review Actions

 Plaintiff's refund action prays for restitution of a tax penalty that was previously paid. Plaintiff bears the burden that its position is correct and that the govern-

ment's position is incorrect. *Welch v. Helvering,* 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212 (1933). "When [a taxpayer] institutes [a] suit in the district court for the recovery of an internal revenue tax or penalty claimed to have been wrongfully collected, he has the burden of proving the assessment was erroneous." *Psaty v. United States,* 442 F.2d 1154, 1158 (3rd Cir.1971). To prevail in an action for overpaid taxes, a plaintiff must "prove by substantial evidence the wrongfulness of the Commissioner's [IRS's] determination." *Kraft v. United States,* 30 Fed.Cl. 739, 757 (1994). The Commissioner's tax liability determination, including penalties, is presumed correct. *Welch,* 290 U.S. at 115, 54 S.Ct. 8 (citing *Wickwire v. Reinecke,* 275 U.S. 101, 48 S.Ct. 43, 72 L.Ed. 184(1927)). "[T]he presumption is that taxes [and penalties] paid are rightly collected upon assessments correctly made by the Commissioner, and in a suit to recover them the burden rests upon the taxpayer to prove all the facts necessary to establish the illegality of the collection." *Niles Bement Pond Co. v. United States,* 281 U.S. 357, 361, 50 S.Ct. 251 (1930) *citing, United States v. Anderson,* 269 U.S. 422, 46 S.Ct. 131, 70 L.Ed. 347 (1926); *Greer v. United States,* 408 F.2d 631 (6th Cir.1969).

Review of the collection due process hearing determinations involves the same standards of review as mentioned above. Plaintiff bears the burden of proving by substantial evidence the wrongfulness of the Commissioner's penalty assessments for the relevant periods. Again, deference is afforded to the Commissioner's determinations and the penalty assessments are presumed correct.

### B. 26 U.S.C. § 6656—Failure to Make Deposit of Taxes

The penalties at issue were imposed pursuant to Section 6656 of the Internal Revenue Code. The relevant language therein provides for the imposition of penalties for "failure by any person to deposit (as required by this title or by regulations of the Secretary under this title) on the date prescribed therfor any amount of tax imposed by this title... unless it is shown that such failure is due to reasonable cause and not due to willful neglect..." 26 U.S.C. § 6656(a). Section 6656 establishes penalties in terms of percentages of the amount of underpayment of a taxpayer's obligation.[4] "The term 'underpayment' means the excess of the amount of the tax required to be deposited over the amount, if any, thereof deposited on or before the date prescribed therfor." 26 U.S.C. § 6656(b)(2).

In the circumstances giving rise to the present dispute, Plaintiff did not remit an amount less than that owed. The amount of Plaintiff's tax obligations, and the fact that those amounts were paid in full for the periods at issue, is undisputed. However, the IRS considered the amounts deposited by Plaintiff to be "underpayments" because the funds were not deposited via the EFTPS and therefore, were not deposited "as required by [the Code] or by regulations of the Secretary..." Accordingly, the penalties in question amount to 10% of each respective total amount of employment taxes deposited by Plaintiff for each taxable period at issue. The IRS penalized Plaintiff for refusing to deposit its employment taxes as mandated by Title 26 and associated Treasury Regulations, i.e., by way of the EFTPS, for a period of more than 15 days. *See* 26 U.S.C. § 6656(b)(1)(A)(iii).

### C. Plaintiff's Arguments

In its first argument, Plaintiff asserts that imposition of the penalties pursuant to § 6656 is contrary to law because in

---

**4.** *See supra,* pp. 818–19 for penalty percentage rate.

fact no "underpayments" ever existed. Plaintiff contends that during the periods in which the penalties were assessed, it paid its employment taxes in full and timely (Plaintiff's Motion For Summary Judgment at p. 5). In support of its position, Plaintiff points to the fact that the IRS never issued any notices concerning, nor instituted any actions or proceedings seeking, unpaid taxes (Plaintiff's Motion For Summary Judgment at p. 5). Plaintiff's interpretation of the statute seeks to establish that before a penalty can be imposed, there must first exist an "underpayment." Recognizing that an "underpayment" only exists to the extent that there is an "excess of the amount required to be deposited over the amount" actually deposited, Plaintiff contends that no "underpayments" upon which to calculate penalties ever existed (Plaintiff's Motion For Summary Judgment at p. 6). Consequently, Plaintiff maintains that in the absence of any such "underpayments," Section 6656 provides no basis for the imposition of the penalties involved in the instant dispute.

Alternatively, Plaintiff urges that it in fact complied, or at least substantially complied with the requirements concerning the EFTPS mandated by the Code. It argues that it met the obligations under § 6302(h) for the relevant quarters by submitting its employment taxes to a bank, which then electronically transferred the funds to the Treasury before the date on which those taxes became due (Plaintiff's Motion For Summary Judgment at p. 10). Plaintiff maintains that, at a minimum, it substantially complied with regulatory requirements and procedures concerning the manner by which it deposited employment taxes. Plaintiff contends that it submitted its taxes in full, on time and by EFT, and therefore fulfilled the essential purpose of § 6302(h) so as to render imposition of the penalties at issue inappropriate (Plaintiff's Motion For Summary Judgment at p. 11).

Finally, Plaintiff alleges in the alternative that its failure to deposit taxes in the manner prescribed was due to reasonable cause and not due to willful neglect. Accordingly, Section 6656(a) prohibits imposition of the penalties at issue. Citing to its concerns over the "integrity" of the electronic filing system, the complications potentially associated with the date change from the year 1999 to the year 2000(Y2K), and the lack of certain "internal control features" through the EFTPS, Plaintiff argues that its decision to deposit taxes by means other than the Electronic Federal Tax Payment System was based on reasonable business concerns and not made in bad faith with an intent to avoid its tax liability (Plaintiff's Motion For Summary Judgment at pp. 13–14).

## D. Defendant's Arguments

The government maintains that the penalties were properly assessed under Section 6656 because Plaintiff did not deposit its taxes in the manner prescribed by the Code and associated Treasury Regulations. Defendant points to the specific express authority delegated by Congress to the Secretary of the Treasury to set up and implement the method of collecting taxes electronically in support of its position (Defendant's Cross Motion For Summary Judgment at pp. 7–8). Defendant argues that Plaintiff purposefully chose not to come into compliance with the EFTPS even after sufficient notice of its implementation, including a significant delay in time so to provide taxpayers adequate time to set up proper procedures as well as an abatement of penalties by the IRS for the third quarter of 1999 (Defendant's Motion For Summary Judgment at pp. 3 and 9–10). Accordingly, Defendant contends that Plaintiff willfully violated procedures mandated by the Code concerning the method by which it must deposit employment taxes, and any arguments seeking

abatement or suggesting the erroneous imposition of penalties are without merit.

### E. Analysis

#### 1. Section 6656

The penalties at issue were imposed pursuant to Sections 6656(a) and (b)(1)(iii). Section 6656 is entitled "Failure to make deposit of taxes." Subsection(a) is entitled "Underpayment of deposits" and specifically authorizes the imposition of penalties. As mentioned earlier, the term "underpayment" is defined in § 6656(b)(2) as "the excess of the amount of the tax required to be deposited over the amount, if any, thereof deposited on or before the date prescribed therefor." The penalty schedule in § 6656(b)(1) provides for penalties equivalent to percentages of the amount of an underpayment. Plaintiff interprets 6656 to require the existence of an "underpayment" as a prerequisite to the imposition of penalties. According to Plaintiff, timely payment in full of one's tax liabilities into an authorized government depository satisfies the obligations delineated in 6656, and insulates a taxpayer from any penalties resulting from an "underpayment." Section 6656, however, is more comprehensive than the foregoing interpretation explains.

The operative language in § 6656(a) relevant to the penalties here imposed is the parenthetical phrase stating that a person must deposit taxes "(as required by this title or regulations of the Secretary under this title)." Accordingly, 6656 contemplates the imposition of penalties not only for failure to deposit taxes, 1) in full; 2) on the prescribed date; and 3) in an authorized government depository, but also for failure to deposit taxes as required by Title 26 of the United States Code ( the Internal Revenue Code) or by Treasury Regulations under Title 26. 26 U.S.C. § 6302(h) and Treasury Regulation Section 31.6302–1(h) (26 C.F.R. § 31.6302–1(h)) re-

quire certain taxpayers to deposit employment taxes electronically through the EFTPS. Therefore, Section 6656 contemplates the imposition of sanctions upon those who deposit taxes by means other than those required by 26 U.S.C. § 6302(h) and 26 C.F.R. § 31.6302–1(h).

Section 6656(b) delineates the penalty schedule and provides for penalties as "applicable percentages" of the amount of "underpayment." The percentages range from 2% to 10% depending on the number of days an "underpayment" exists. Indeed, the subsection does make reference to an amount of "underpayment" and it could be made to appear that an "underpayment," in the sense of a payment less than that which is owed, is required. However, subsection (b) must be read in conjunction with 6656(a). Subsection(a) identifies situations in which an "underpayment of deposits" is present. The subsection is drafted in the negative. It considers the "failure by any person" to comply with its requirements to demonstrate a "failure to deposit taxes" because of an "underpayment." When read in the converse, subsection(a)'s requirements are as follows: 1) deposits must be paid on the date prescribed therefor; 2) deposits must be for the amount of tax imposed by Title 26; 3) deposits must be made in a government depository as is authorized by 26 U.S.C. § 6302(c) and; 4) deposits must be as required by Title 26 and Treasury Regulations of the Secretary of the Treasury made under Title 26. *See* 26 U.S.C. § 6656(a). If a deposit does not comport with the four requirements set out above, the taxpayer is considered to have made an "underpayment of deposit" under 6656(a). For the purpose of calculating the penalty associated with Section 6656's "[f]ailure to make deposit of taxes," subsection(b) prescribes penalties based on a percentage of the amount of taxes that

are not deposited, as required by subsection(a).

It is uncontested that Plaintiff remitted the proper amounts of employment taxes. Furthermore, it is accepted that Plaintiff submitted the taxes to its bank, which then made payment to an authorized government depository on or before the dates said taxes were due. The three (3) separate penalties were not assessed, however, for late payments or for payments less than that which was required, but were imposed because the deposits were made other than as required by Section 6656(a). That is to say, Plaintiff did not deposit "as required" by the Code and applicable Treasury Regulations. Specifically, Plaintiff did not use the EFTPS. The penalties were on the order of 10% because in each instance Plaintiff did not deposit its taxes in accordance with all of the requirements of 6656(a) within 15 days of the respective dates on which the employment taxes were due. Again, specifically, Plaintiff did not submit its employment taxes pursuant to the EFTPS for the relevant periods. Accordingly, 10% penalties were assessed due to the fact that Plaintiff did not make valid deposits under Section 6656(a) within 15 days of the due dates.

■ "Under accepted cannons of statutory interpretation, [courts] must interpret statutes as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous." *Mitchell v. Chapman,* 343 F.3d 811, 825 (6th Cir.2003), *quoting, Lake Cumberland Trust, Inc. v. United States Environmental Protection Agency,* 954 F.2d 1218, 1222 (6th Cir.1992). The plain meaning of a statute controls unless a literal application of the statutory language will produce a result demonstrably at odds with the intent of the drafters, or if the language itself is ambiguous. *Kelley v. E.I. DuPont*

*de Nemours and Co.,* 17 F.3d 836, 842 (6th Cir.1994) *citing, United States v. Steele,* 933 F.2d 1313, 1317 (6th Cir.1991). "In construing the tax law, as for any statute, the starting point is the words of the statute, taking the words in their ordinary meaning in the field of interest." *Xerox Corp. v. United States,* 41 F.3d 647, 658 (Fed.Cir.1994) (citing *Bread Political Action Committee v. Federal Election Commission,* 455 U.S. 577, 580, 102 S.Ct. 1235, 71 L.Ed.2d 432 (1982), and *Perrin v. United States,* 444 U.S. 37, 42, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979)).

■ A comprehensive reading of Section 6656 implores a finding that Congress intended to authorize the imposition of penalties upon taxpayers who fail to make deposits as required by Title 26 and Treasury Regulations made thereunder. Pursuant to the plain meaning of the statute, penalties are warranted when a taxpayer deposits by a manner and means other than those mandated by the tax Code.

Plaintiff does not dispute that it was required by Title 26 to deposit its employment taxes by EFT for the periods at issue. Plaintiff concedes that it did not use the EFTPS established in Treasury Regulation § 31.6302–1 to make its deposits for those periods. However, Plaintiff argues that penalties for its refusal to abide by Code procedures are not authorized by Section 6656 because no "underpayments" ever existed. Under Plaintiff's interpretation, taxpayers could ignore any and all other requirements of the tax Code and still avoid penalties under 6656 as long as they make full and timely payment to an authorized government depository. Such a reading is inconsistent with the statutory purpose of Section 6656. Again, § 6656(a) contemplates penalties for "failure by any person to deposit (as required by this title or by regulations of the Secretary under this title)..." Plaintiff's inter-

pretation strips the parenthetical language of any impact or meaning and effectively nullifies it. By focusing on the single word "underpayment," Plaintiff attempts to avoid the language which authorizes penalties for failure to make deposits "as required by Title 26." This selective interpretation is at odds with the overall intent and meaning of Section 6656 and renders subsections(a) and (b) inconsistent with one another.

The tax Code is complex and often requires intensive scrutiny by tax professionals to ensure compliance therewith. The perplexity of the Code renders it vulnerable to selective interpretations favorable to taxpayers. Plaintiff's myopic reading of Section 6656 attempts to escape the mandates of one provision by relying on an isolated and literal interpretation of another. It's interpretation renders 6656(a) inconsistent with 6656(b). Literal application of statutory language in separate sections in a disjunctive manner so to render a statute internally inconsistent and vitiate the statute's Congressional intent a court will not do. Rather, a court must interpret the relevant section "as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous." *Chapman*, 343 F.3d at 825. Invoking such a reading of 26 U.S.C. Section 6656, the Court finds that subsections(a) and (b) authorize the imposition of penalties when a taxpayer fails to deposit its taxes as required by the Code. Accordingly, the IRS properly assessed penalties for Plaintiff's failure to deposit its employment taxes by way of the EFTPS for the quarters at issue.

The standard for interpreting statutes which impose a tax directs liberal construction in favor of the taxpayer. *Porter v. Commissioner*, 288 U.S. 436, 53 S.Ct. 451, 77 L.Ed. 880 (1933); *Weingarden v. Commissioner*, 825 F.2d 1027, 1029 (6th Cir.1987); *Holmes Limestone Co. v. United States*, 946 F.Supp. 1310, 1329 (N.D.Ohio 1996). "[I]f doubt exists as to the construction of a taxing statute, doubt should be resolved in favor of the taxpayer." *Xerox Corp. v. United States*, 41 F.3d 647, 658 (Fed.Cir.1994). Although these principles inform Tax Code interpretation, they do not authorize fragmentary exploitation of any one section in the interest of avoiding compliance with the Code or tax liability reduction. The Court is without doubt in this case. A cohesive construction of the relevant Internal Revenue Code sections permits only one conclusion: Section 6656 authorizes penalties for Plaintiff's failure to deposit its employment taxes electronically under the EFTPS.

2. Section 6302(h) and Treasury Regulation § 31.6302–1(h)

Subtitle F of the Internal Revenue Code (Title 26) is entitled "Procedure and Administration." Included in Subtitle F is Chapter 64 entitled "Collection." Subchapter A provides for "General Provisions" and includes 26 U.S.C. § 6302 entitled "Mode or time of collection." Section 6302 mandates electronic remittance of depository taxes by taxpayers subject to the requirement.[5] The parties stipulate that Plaintiff was required under the Code to deposit its employment taxes for the relevant periods by EFT.

The authority given by Congress in § 6302 to the Secretary of the Treasury over the collection of tax liabilities and the administration thereof is expansive. For example, Section 6302 begins with subsec-

---

**5.** Treasury Regulation §§ 31.6302–1(h)(2) and (3) indicate to which entities EFT requirements apply. That Plaintiff is subject to the requirements for the periods at issue is not in dispute.

tion (a), "Establishment by regulations," and provides, "[i]f the mode or time for collecting tax is not provided for by this title, the Secretary may establish the same by regulations." Such an express delegation evinces the Congressional intent to provide the Secretary of the Treasury broad general authority over the collection of taxes. Furthermore, § 6302(h) specifically authorizes the Secretary to prescribe Regulations "as may be necessary for the development and implementation of an electronic fund transfer system..." As a result of this delegation by Congress, any Regulations made pursuant to § 6302(h), which are necessary for the development and implementation of the EFTPS, are considered to be legislative or substantive Regulations as opposed to those which merely interpret the Code.[6] As such, Treasury Regulation § 31.6302–1(h) mandating procedures by which deposits must be submitted in accordance with the EFTPS, is binding on the Court and may not be set aside unless procedurally defective, arbitrary or capricious in substance or manifestly contrary to the statute. *United States v. Mead Corp.*, 533 U.S. 218, 227, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001), *citing, Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

■ . Courts have long recognized Congress' delegation to the Secretary of the Treasury the authority and responsibility to administer and implement the tax laws of the United States. *See* 26 U.S.C. §§ 7801(a) and 7805(a); *Commissioner of Internal Revenue v. Portland Cement Co. of Utah*, 450 U.S. 156, 169, 101 S.Ct. 1037, 67 L.Ed.2d 140 (1981); *United States v.*

*Cartwright*, 411 U.S. 546, 550, 93 S.Ct. 1713, 36 L.Ed.2d 528 (1973); *Commissioner of Internal Revenue v. South Texas Lumber Co.*, 333 U.S. 496, 501, 68 S.Ct. 695, 92 L.Ed. 831 (1948). Consequently, Regulations promulgated under the Secretary's authority are sustained unless found to be unreasonable and demonstrably inconsistent with the Internal Revenue Code. *Portland Cement Co.*, 450 U.S. at 169, 101 S.Ct. 1037; *Bingler v. Johnson*, 394 U.S. 741, 749–51, 89 S.Ct. 1439, 22 L.Ed.2d 695 (1969). "[L]egislative regulations not promulgated under the general authority to prescribe all needful rules and regulations, 26 U.S.C. § 7805(a), but instead emanating from a specific grant of Congressional authority to... prescribe a method of executing a statutory provision are owed an even greater deference." *Armstrong World Industries, Inc. v. Commissioner of Internal Revenue*, 974 F.2d 422, 430 (3rd Cir.1992), *quoting, Rowan Cos. v. United States*, 452 U.S. 247, 253, 101 S.Ct. 2288, 68 L.Ed.2d 814 (1981) (internal quotation marks omitted). Such a regulation may only be set aside if the Secretary exceeded his statutory authority or if found to be arbitrary, capricious, an abuse of discretion, or not otherwise in accordance with law. *See Batterton v. Francis*, 432 U.S. 416, 426, 97 S.Ct. 2399, 53 L.Ed.2d 448 (1977).

The validity of Treasury Regulation § 31.6302–1(h) is not subject to challenge. The electronic system implemented therein is prescribed with express statutory authorization and does not represent administration in excess of the Secretary's authority or in an arbitrary or capricious manner. Plaintiff does not challenge the validity of Regulation § 31.6302(h). How-

---

**6.** A legislative regulation is promulgated pursuant to a specific congressional direction whereas an interpretive regulation issues absent any specific express directive from Congress and serves purpose primarily to interpret a congressional enactment. *See Brown–Forman Corp. v. Commissioner of Internal Revenue*, 955 F.2d 1037, 1041, n. 2 (6th Cir. 1992).

ever, Plaintiff does challenge Revenue Ruling 95–68 which addresses the exact circumstance before the Court; that is, the failure by a taxpayer to deposit by electronic funds transfer. Revenue Ruling 95–68 construes 26 U.S.C. Section 6656 to impose a failure-to-deposit penalty if a taxpayer deposits by means other than EFT, or by EFT after the date on which the taxes are due.

Revenue Ruling 95–68 presents the following issue: "[i]s a taxpayer required to deposit federal taxes by electronic funds transfer (EFT) subject to the failure-to-deposit penalty imposed by § 6656 of the Internal Revenue Code if the taxpayer deposits the taxes by means other than EFT, or by EFT after the date on which the taxes are due?" The Ruling offers specific hypothetical examples of situations in which a taxpayer submits other than by EFT. The Ruling holds that "[a]bsent reasonable cause, a taxpayer that is required to deposit federal taxes by EFT is subject to the failure-to-deposit penalty imposed by § 6656 if the taxpayer deposits the taxes by means other than EFT, or by EFT after the date on which the taxes are due." Accordingly, Revenue Ruling 95–68 supports the proposition that penalties assessed pursuant to Section 6656 are appropriate even where taxes are timely paid, albeit by means other than EFT.

■ IRS Revenue Rulings do not have the effect of law and are not binding on the courts. *Foil v. Commissioner of Internal Revenue,* 920 F.2d 1196, 1201 (5th Cir. 1990). "Revenue rulings are comparable to attorney general's opinions. They represent only the IRS's opinion of what a law requires, issued for the information and guidance of taxpayers, IRS officials, and others concerned." *Flanagan v. United States,* 810 F.2d 930, 934 (10th Cir.1987). They do not have the effect of a Treasury Regulation, which is promulgated in accordance with the requirements of the Admin-

istrative Procedure Act and issued only after the opportunity for comment by concerned parties, but are entitled to consideration. *Id.*

Plaintiff recognizes that Revenue Ruling 95–68 contemplates the exact issue presented by its first argument for relief, i.e. that because no "underpayments" ever existed § 6656 does not authorize the imposition of penalties. Plaintiff correctly notes that the Ruling does not have the effect of law and should be disregarded if it conflicts with the statute it purports to interpret (Plaintiff's Motion For Summary Judgment at pp. 8–9 *citing, Foil,* 920 F.2d at 1201, *Flanagan,* 810 F.2d at 934, and *Stubbs, Overbeck & Associates, Inc. v. United States,* 445 F.2d 1142, 1146–47 (5th Cir.1971)). However, other than Plaintiff's own interpretation of Section 6656, it offers no arguments that give the Court reason to disregard the Ruling. That is to say, Plaintiff does not demonstrate how the Ruling constitutes an unreasonable interpretation of the statute or otherwise conflicts with the Congressional intent manifested in Section 6656.

Recognizing that Revenue Ruling 95–68 represents an interpretive opinion of Section 6656 with regard to the imposition of penalties for depositing taxes other than by EFT, the Court does not automatically accept the holding therein as presumptively valid. However, the opinion offered by the Ruling represents a reasonable interpretation of Section 6656 and is given "respectful consideration." *See Groves v. United States,* 533 F.2d 1376, 1380 (5th Cir.1976). Furthermore, the opinion embodied in Revenue Ruling 95–68 coincides with the Court's own interpretation and more accurately reflects the plain meaning and statutory intent of of Section 6656 than does Plaintiff's. The Court finds statutory authority for the imposition of penalties pursuant to a taxpayer's remit-

tance of taxes other than by the EFTPS. Consequently, the penalties at issue were properly assessed.

### 3. Compliance/Substantial Compliance with Electronic Filing Requirements

Plaintiff contends in the alternative that it complied with the electronic requirements of 26 U.S.C. § 6302(h) and Treasury Regulation § 31.6302–1. After receiving delivery of the taxes at issue from Plaintiff, Bank One is claimed to have electronically transferred them to the IRS in satisfaction of Internal Revenue Code requirements (Plaintiff's Motion For Summary Judgment at pp. 9–10). Plaintiff maintains that its bank created electronic Advices of Credit with the Federal Treasury on or before the respective dates the taxes at issue were due (Plaintiff's Motion For Summary Judgment at p. 11).

Revenue Procedure 97–33 delineates the procedures available for depositing taxes under the Electronic Federal Tax Payment System. Section 6 defines an electronic funds transfer as "any transfer of funds, other than a transaction originating by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution or other financial intermediary to debit or credit an account." Plaintiff cites this definition in support of the position that it complied with the requirements for depositing taxes under the EFTPS. The Court disagrees with Plaintiff's contention.

As conveyed by its title, the Electronic Federal Tax Payment System is a *system.* One by which taxpayers can deposit, and by which the Treasury can receive taxes.

Furthermore, the EFTPS is one by which the Treasury administers the collection of taxes and one which allows both taxpayers and the government alike to track payments so to ensure fulfillment of Internal Revenue obligations. The EFTPS enables taxpayers to make electronic payments 24 hours a day, 7 days a week through the use of various EFTPS services or software. For example, a taxpayer can deposit taxes telephonically by using EFTPS–Phone or by way of computer through EFTPS–OnLine or EFTPS–PC Software. Once the System processes and accepts a payment, the taxpayer receives an EFT Acknowledgment Number confirming the payment. The funds are then transferred to the Treasury's account on that same date.

■ Plaintiff's argument that it satisfied EFTPS requirements because its bank submitted the funds by way of "paperless" or electronic transfers on or before the respective due dates misses the point. The IRS assessed penalties because Plaintiff did not use the electronic *system* prescribed by law. The transfers by Bank One were outside the prescribed System for making deposits electronically as mandated by the Code and relevant Treasury Regulations.[7] Accordingly, the deposits at issue were made other than as required by Title 26 and Regulations of the Secretary under that Title, and therefore, Section 6656 penalties were properly imposed.

As an alternative, Plaintiff argues that even if it did not comply with the literal requirements of the EFTPS as mandated by the Code, it substantially complied and therefore, penalties are unwarranted. It contends that its method of depositing em-

---

7. In a correspondence to the IRS dated January 14, 2000, Plaintiff's accountant admits that Plaintiff's practice whereby Bank One electronically wires employment taxes to the Treasury is not in compliance with EFTPS requirements. *See* Defendant's Motion For Summary Judgment at Ex. A, Accountant's Letter to Department of Treasury dated January 14, 2000.

ployment taxes for the periods at issue fulfilled the essential purpose of § 6302(h) (Plaintiff's Motion For Summary Judgment at p. 10). Plaintiff cites several Tax Court cases for the proposition that substantial compliance with regulatory requirements may suffice when such requirements are procedural and when essential statutory purposes have been fulfilled (*See* Plaintiff's Motion For Summary Judgment at pp. 10–11), *citing, American Air Filter Co., Inc. v. Commissioner of Internal Revenue,* 81 T.C. 709, 719, 1983 WL 14887 (U.S. Tax Ct.1983); *Taylor v. Commissioner of Internal Revenue,* 67 T.C. 1071, 1077, 1977 WL 3751 (U.S.Tax Ct.1977); *Hewlett–Packard Co. v. Commissioner of Internal Revenue,* 67 T.C. 736, 750, 1977 WL 3644 (U.S.Tax Ct.1977); *Columbia Iron and Metal Co. v. Commissioner of Internal Revenue,* 61 T.C. 5, 8–10, 1973 WL 2672 (U.S.Tax Ct.1973); *Dougherty v. Commissioner of Internal Revenue,* 60 T.C. 917, 941, 1973 WL 2518 (U.S.Tax Ct.1973)).

From the cases cited in its motion Plaintiff identifies five (5) factors courts consider in determining whether a taxpayer substantially complied with procedural requirements so as to fulfill the essential purpose of the statute at issue. The factors are: 1) whether the taxpayer's alleged failure to comply fully defeats the purpose of the statute; 2) whether the taxpayer attempts to benefit from hindsight by adopting a position inconsistent with his original action or omission; 3) whether the Commissioner is prejudiced; 4) whether the sanction imposed is excessive and out of proportion to the default; and 5) whether the regulation provided with detailed specificity the procedure at issue. *American Air Filter Co., Inc.,* 81

T.C. at 719–20. Plaintiff goes on to evaluate each of the factors above in light of the present circumstances to arrive at the conclusion that it substantially complied with the electronic filing requirements of the EFTPS and the Code, and thus, that penalties are inappropriate (Plaintiff's Motion For Summary Judgment at pp. 11–13). Consideration of these factors, and Plaintiff's arguments on each, however, is unnecessary. The cases cited above do not contemplate the present circumstances.

In each case cited in support of the substantial compliance doctrine, taxpayers attempted to make certain "elections" under the Code. However, due to the fact that they did not strictly adhere to administrative procedures, each was denied the benefits of such elections.[8] In each instance the taxpayers followed the substantive directives of the relevant Code sections but simply neglected to comply with procedural prerequisites. In each case the Tax Court found that the essential purposes of the respective Internal Revenue statutes were fulfilled. A circumstance akin to those addressed in the above-mentioned cases is not present in the current dispute. Here, Plaintiff did not fulfill the essential purpose of the statute and its noncompliance was not merely procedural in nature. Rather, by depositing its employment taxes by means other than those prescribed, i.e. other than by and through the EFTPS, Plaintiff did not comply with the substantive purpose of Section 6302(h).

Plaintiff cites Section 6302(h)(1)(A) for its statutory purpose as follows: "[s]uch a system [electronic fund transfer system] shall be designed in such a manner as may be necessary to ensure that such taxes are

---

**8.** Examples include taxpayers' failure to file forms due to clerical oversights, failure to fill out forms properly or failure to file required internal documents such as corporate min-

utes authorizing an election, and failure to file a statement of election despite adhering to accounting methods required under the election.

credited to the general account of the Treasury on the date on which such taxes would otherwise have been required to be deposited under the Federal tax deposit system." (Plaintiff's Motion For Summary Judgment at p. 11). Clearly the electronic system contemplated by § 6302(h) seeks to ensure credits to the Treasury's accounts in a more timely manner. However, that is not the sole purpose of the statute. Internal Revenue Code Section 6302(h) primarily serves purpose to establish an efficient and self-contained electronic tax payment *system*. One which has several advantages over the old and outdated system (*See* Defendant's Cross Motion For Summary Judgment at pp. 10–14 for a descriptive illustration regarding the advantages of the EFTPS over its predecessor system of collecting employment taxes).

"The critical question to be answered [for determining the applicability of the substantial compliance doctrine] is whether the requirements relate to the substance or essence of the statute." *Taylor*, 67 T.C. at 1077. If they do, strict adherence to all statutory requirements, including those that are regulatory and procedural in nature, is necessary. *Id.* The statute at issue establishes a procedure/manner by which certain taxpayers must deposit taxes. Plaintiff argues that a timely "electronic fund transfer" deposit, made by means other then the EFTPS as mandated in the statute, acts to fulfill the essential statutory purpose. The argument does not demonstrate substantial compliance. The fundamental purpose of the statute is to establish an electronic system by which EFT deposits are to be made. Plaintiff repeatedly refused to use the Electronic Federal Tax Payment System to make its deposits. Therefore, Plaintiff did not substantially comply with Section 6302(h) and associated Regulations and Procedures to warrant abatement of the penalties in question.

4. Reasonable Cause/Willful Neglect

Finally, Plaintiff argues that its failure to deposit employment taxes in the manner prescribed by Section 6302(h) and appurtenant Regulations and Procedures was due to reasonable cause and not due to willful neglect. Accordingly, it seeks abatement of the imposed penalties pursuant to § 6656(a) (Plaintiff's Motion For Summary Judgment at p. 13). As discussed earlier, § 6656(a) authorizes the imposition of penalties for failure by a taxpayer to timely deposit the proper amount of taxes as required by Title 26 in an authorized government depository. Section 6656(a) expressly waives imposition of the penalties described therein where "it is shown that such failure [to comply with the requirements of subsection (a)] is due to reasonable cause and not due to willful neglect..."

The Court finds that Plaintiff did not comply with the Code and IRS Regulations. To avoid § 6656(a) penalties Plaintiff must establish that its failure to comply was due to reasonable cause and not due to willful neglect. To do so, Plaintiff must satisfy "the heavy burden of proving both 1) that the failure did not result from willful neglect, and 2) that the failure was due to reasonable cause." *United States v. Boyle*, 469 U.S. 241, 245, 105 S.Ct. 687, 83 L.Ed.2d 622 (1985). Willful neglect is defined as a conscious intentional failure or reckless indifference. *Id.* Reasonable cause connotes that the taxpayer exercised ordinary business care and prudence with regards to its decisions and/or methods. *Id.*

■ In support of reasonable cause, Plaintiff states that it had legitimate concerns over the "integrity" of the EFTPS, that under its own method of payment it maintained a higher degree of "internal control" over its taxes, and that year 2000(Y2K) implications gave Plaintiff cause

for concern with regard to the EFTPS (Plaintiff's Motion For Summary Judgment at pp. 13–14). As instructed by the governing summary judgment standard, the Court accepts Plaintiff's alleged concerns as genuine. Even so, such concerns do not compel a finding that Plaintiff acted with reasonable cause.

Other than a bare assertion, Plaintiff provides no facts upon which it depends for the position that the EFTPS does not provide internal control and security features as sufficient as those Plaintiff maintained under the old system and/or its method of depositing employment taxes. In fact, given the superiority of the EFTPS with regard to taxpayers' ability to personally track funds by computer at any time and monitor receipt by the IRS by way of expeditious acknowledgment notices, it is difficult to imagine how Plaintiff's method was more secure or provided more control. Plaintiff's Y2K concerns similarly do not support its behavior as being consistent with ordinary business care and prudence. As stipulated, the time period during which Plaintiff refused to comply dates from mid–1999 (second and third quarters) through early 2001 (fist quarter) (*See* Joint Stipulation Of Facts at p. 2, ¶¶ 1 and 10). Concerns generated by Y2K theories were squelched very soon after January 1, 2000. Plaintiff's refusal to use the EFTPS, however, includes the remainder of 2000 and even into 2001. Accordingly, the refusal was not the result of reasonable concerns over the potential for Y2K computer problems which were absent shortly after January 1, 2000. Plaintiff does not carry its burden so as to demonstrate that its refusal to use the EFTPS was due to reasonable cause.

Furthermore, Plaintiff offers no argument suggesting, nor facts demonstrating that its non-use of the EFTPS was not due to willful neglect. It is well-established that a taxpayer seeking to abate penalties pursuant to 6656(a) must prove both 1) that its failure make deposits thereunder was due to reasonable cause, and 2) was not due to willful neglect. *Valen Manufacturing Co. v. United States,* 90 F.3d 1190, 1192 (6th Cir.1996), *quoting, Boyle,* 469 U.S. at 245, 105 S.Ct. 687. Plaintiff makes no attempt to argue the absence of willful neglect. Even if Plaintiff could prove that its failure to deposit by way of the EFTPS was due to reasonable cause, it proffers no argument in support of the additional requirement under 6656(a). That is, Plaintiff sets forth no separate argument in support of the proposition that its failure to deposit by EFTPS was not due to willful neglect. In fact, uncontroverted evidence before the Court indicates that Plaintiff's failure was in fact due to willful neglect. In a letter to the IRS dated January 14, 2000, Plaintiff's accountant concedes that the method by which Plaintiff was depositing employment taxes was not in compliance with new regulations under the Code (*See* Defendant's Cross Motion For Summary Judgment at Ex. A, Accountant's Letter To Department of Treasury dated January 14, 2000). The fact that the letter is dated January 14, 2000, demonstrates that Plaintiff's continued noncompliance through the first quarter of 2001, was the result of a deliberate and conscious decision.[9] Accordingly, Plaintiff's failure to comply with EFTPS was due to its own willful neglect and the imposition of penalties under Section 6656(a) is proper.

9. Like the more than 1.2 million similarly situated taxpayers required to use the EFTPS, Plaintiff was given sufficient notice of the deadline by which it was to come into compliance. Plaintiff had adequate time to implement internal procedures so to address their concerns. *See* Defendant's Cross Motion For Summary at p. 11, n. 8, citing an Internal Revenue News Release.

## III. CONCLUSION

Plaintiff does not carry its burden of proving the incorrectness of the Commissioner's position with regard to the assessment of the penalties at issue, nor does it establish the correctness of its own. The record is devoid of the substantial evidence necessary to overcome the presumption of correctness afforded the IRS's position. Based on the facts as stipulated by the parties, and the Court's interpretation of the statutes implicated by the dispute, Plaintiff is not entitled to judgment as a matter of law. Specifically, the Court finds that the penalties assessed by the IRS were properly imposed under 26 U.S.C. Section 6656 for Plaintiff's failure to deposit its employment taxes as required by the Internal Revenue Code. Furthermore, the Court finds that Plaintiff did not comply with the statutory requirements associated with the EFTPS, nor did it substantially comply therewith so to warrant abatement of the penalties at issue. Finally, the Court finds that Plaintiff's failure to deposit by way of the EFTPS was due to willful neglect and not pursuant to reasonable cause and therefore, Plaintiff is not entitled to abatement under Section 6656(a).

Recognizing that there are no operative facts in issue, the Internal Revenue Code as interpreted by the Court, pursuant to interpretive precedent and principles of comprehensive construction, begets but one logical conclusion: the penalties assessed by the IRS central to the three (3) actions before the Court were properly imposed under Section 6656 of the Internal Revenue Code. Accordingly, Defendant's Cross Motion For Summary Judgment is GRANTED.

For all of the foregoing reasons, Plaintiff's Motion For Summary Judgment is DENIED and Defendant's Cross Motion For Summary Judgment is GRANTED. Plaintiff is not entitled to the refund sought in Case No. 5:02CV1569, and the action is dismissed with prejudice, each party to bear its own costs. Likewise, the actions seeking judicial review of collection due process determinations embodied in Case Nos. 1:01CV097 and 5:02CV150 are dismissed with prejudice, each party to bear its own costs.

IT IS SO ORDERED.

## *ORDER*

Pursuant to the Memorandum of Opinion issued this date in the above-captioned matter denying Plaintiff's Motion For Summary Judgment and granting Defendant's Cross Motion For Summary Judgment, Case No. 1:01CV097 seeking judicial review of an Internal Revenue Service collection due process determination is hereby dismissed with prejudice, each party to bear its own costs. Additionally, Case No. 5:02CV150 seeking the same relief but regarding a second collection due process determination is hereby dismissed with prejudice, each party to bear its own costs. Finally, pursuant to the Memorandum of Opinion above-referenced, Case No. 5:02CV1569 seeking a refund of a tax penalty is hereby dismissed with prejudice, each party to bear its own costs.

IT IS SO ORDERED.